**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| APPROOV LTD.,<br><br>Plaintiff,<br><br>v.<br><br>GUARDSQUARE NV, GUARDSQUARE INC., and GUARDSQUARE GmbH,<br><br>Defendants. | Civil Action No. 1:26-cv-13924-AK |

**PLAINTIFF APPROOV LTD.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND OBJECTION TO THE DECLARATION OF ORION ARMON**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

- A. The '858 Patent and the Complaint .......... 2
- B. The Motion and the Armon Declaration .......... 3

III. LEGAL STANDARD .......... 3

IV. PLAINTIFF OBJECTS TO THE ARMON DECLARATION AND ITS EXHIBIT 1 .......... 4

- A. The Armon Declaration and Exhibit 1 Are Outside the Pleadings and Should Be Excluded .......... 4
- B. Even If Considered, Counsel's Assertions Cannot Be Credited Against the Complaint's Allegations. .......... 6

V. THE COMPLAINT PLAUSIBLY ALLEGES INFRINGEMENT OF EVERY ASSERTED CLAIM. .......... 7

- A. The Standard Is Fair Notice and Plausibility, Not Element-by-element Proof. .......... 7
- B. The Complaint and Exhibit B Exceed the Required Standard. .......... 8
- C. The Two Limitations Guardsquare Singles Out Are Plausibly Pleaded. .......... 9
- D. Guardsquare's Authorities Do Not Establish A Heightened Standard for Software Cases. .......... 10

VI. COUNTS I AND II STATE CLAIMS FOR INFRINGEMENT OF THE METHOD CLAIMS. .......... 11

- A. The Location of Guardsquare's Servers Is Not Alleged in the Complaint and Cannot Be Resolved By This Motion. .......... 11
- B. The Complaint Pleads Performance of Each Step in the United States by Guardsquare Or Attributable To It. .......... 13

VII. COUNTS III AND IV STATE CLAIMS FOR INFRINGEMENT OF THE SYSTEM CLAIMS. .......... 15

VIII. THE COMPLAINT STATES CLAIMS AGAINST EACH DEFENDANT. .......... 15

- A. Guardsquare NV .......... 15
- B. Guardsquare GmbH .......... 16

IX. DEXGUARD AND IXGUARD ARE PROPERLY ACCUSED. .......... 17

X. IN THE ALTERNATIVE, APPROOV SHOULD BE GRANTED LEAVE TO AMEND. .......... 18

XI. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Cases**

*A. Stucki Co. v. Worthington Indus., Inc.*,
849 F.2d 593 (Fed. Cir. 1988) ........ 16

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) ........ 13, 14

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ........ 4, 7, 14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Bayer CropScience LLC v. Pfizer, Inc.*,
No. 26-13 (D. Del. Sept. 28, 2026) ........ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3, 6, 7

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ........ passim

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) ........ 13

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ........ 15

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-cv-00300-JRG,
2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ........ 11

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ........ 7

*Echosens, S.A. v. E-Scopics S.A.S.*,
No. 1:24-cv-11373-ADB(D. Mass. Mar. 20, 2025) ........ 8, 14

*Foley v. Wells Fargo Bank, N.A.*,
772 F.3d 63 (1st Cir. 2014) ........ 5

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 18

*Fractus, S.A. v. TCL Corp.*,
No. 2:20-cv-00097-JRG,
2021 WL 2483155 (E.D. Tex. June 2, 2021) ........ 11

*García-Catalán v. United States*,
734 F.3d 100 (1st Cir. 2013) ........ 3, 12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........ 4, 6, 14

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
870 F.3d 1320 (Fed. Cir. 2017) ........ 15

*Lexington Luminance LLC v. Technical Consumer Products, Inc.*,
No. 5:22-cv-02235-DAR(N.D. Ohio May 9, 2025) .......... 11

*Liberty Peak Ventures, LLC v. Regions Fin. Corp.*,
No. 2:21-cv-00417-JRG(E.D. Tex. Mar. 15, 2022) .......... 11

*Menard v. CSX Transp., Inc.*,
698 F.3d 40 (1st Cir. 2012) .......... 4, 17

*Mooney v. Fresenius Med. Care Holdings, Inc.*,
No. 1:22-cv-12037-AK(D. Mass. Aug. 22, 2024) (Kelley, J.) .......... 5

*MSTM, LLC v. AB Sciex LLC*,
No. 1:23-cv-11121-MRG(D. Mass. Mar. 10, 2026) .......... 7

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) .......... 6, 9, 14

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) .......... 12, 15

*Ocasio-Hernández v. Fortuño-Burset*,
640 F.3d 1 (1st Cir. 2011) .......... 3, 7

*Ohio State Innovation Foundation v. Akamai Technologies, Inc.*
No. 1:19-cv-11528-ADB (D. Mass. Sept. 20, 2019) .......... 8

*Olsen v. Agenus Inc.*,
No. 1:24-cv-12299-AK(D. Mass. Mar. 24, 2026) (Kelley, J.) .......... 5, 18

*Progenics Pharmaceuticals, Inc. v. MIM Software Inc.*,
762 F. Supp. 3d 100 (D. Mass. 2025) .......... 18

*Pruell v. Caritas Christi*,
678 F.3d 10 (1st Cir. 2012) .......... 17

*PXP Producing Co. v. MitEnergy Upstream LLC*,
342 A.3d 402 (Del. Ch. 2025) .......... 16

*Rampage LLC v. Global Graphics SE*,
No. 1:16-cv-10691-ADB(D. Mass. Jan. 19, 2017) .......... 12, 13

*Sentius Int'l, LLC v. Apple Inc.*,
No. 4:20-cv-00477-YGR(N.D. Cal. Oct. 15, 2020) .......... 13, 14

*Smith v. Bentley Univ.*,
No. 1:25-cv-12317-AK(D. Mass. July 6, 2026) .......... 5, 6

*TechTarget, Inc. v. Spark Design, LLC*,
746 F. Supp. 2d 353 (D. Mass. 2010) .......... 16

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
524 F.3d 315 (1st Cir. 2008) .......... 4, 6

*Travel Sentry, Inc. v. Tropp*,
877 F.3d 1370 (Fed. Cir. 2017) .......... 14

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993) .......... 4

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
990 F. Supp. 2d 50 (D. Mass. 2014) .......... 16

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 15(a)(2) .......... 18

Fed. R. Civ. P. 8 .......... 16, 18

L.R. 16.6(d)(1)(A) .......... 8

L.R. 16.6(d)(1)(A)(i) .......... 18

L.R. 16.6(d)(1)(A)(iii) .......... 8, 18

L.R. 16.6(d)(4) .......... 8, 12

**Statutes**

35 U.S.C. § 271(a) .......... 16

35 U.S.C. § 271(b) .......... 16

Approov Ltd. ("Approov" or "Plaintiff") hereby brings this opposition to the motion to dismiss of Guardsquare NV, Guardsquare Inc., and Guardsquare GmbH (collectively, "Guardsquare" or "Defendants") and objection to the Declaration of Orion Armon, as follows:

## I. INTRODUCTION

Guardsquare's motion opens by claiming that Approov "lacks a well-founded factual basis for the infringement counts in this lawsuit." (Doc No. 22 at 1.) That is not an argument under Rule 12(b)(6). Whether Approov can prove what it alleges in the complaint is a question for trial, or perhaps summary judgment. Guardsquare instead asks the Court to decide the merits of Approov's claims based on a letter from Guardsquare's counsel, filed under seal through a declaration of the same lawyer, which the complaint never mentions and on which it does not rely. Approov objects to the Armon Declaration and its Exhibit 1, and asks the Court to exclude them under Rule 12(d). Without that extrinsic evidence, which a Rule 12 motion does not allow, Guardsquare's motion fails.

Elsewhere in its motion, Guardsquare argues that Approov's detailed infringement allegations set out in the claim chart incorporated in the complaint do not sufficiently describe Defendants' infringement of Approov's asserted patent claims. That too is not a Rule 12(b)(6) argument but a criticism of patent infringement contentions which have not even been served by Approov. Guardsquare's own criticisms show that it knows exactly what Approov alleges and which products and services are accused. That is all the law requires at this stage.

Approov's complaint identifies the asserted claims, names the accused products, explains in narrative paragraphs how the accused attestation system operates, and attaches a limitation-by-limitation chart that quotes Guardsquare's own web pages, blog posts, product documentation and recorded webinar for every element of every asserted claim. (Doc No. 1 ¶¶ 24, 31–36; Doc No. 1-2.) The Federal Circuit has held that a patentee is "not required to plead infringement on an element-by-element basis," that "there is no requirement to provide source code at the pleadings stage," and that a defendant who demands more "demands too much at this stage of the proceedings." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352, 1355, 1356 (Fed. Cir. 2021).

Defendants' motion does not engage this standard and instead asks the Court to require now, from public information, what the Local Rules require later, in contentions served before Guardsquare produces its technical documents.

Guardsquare's remaining arguments fare no better. Defendants' challenge to the method claims rests on an asserted pleading gap and on a fact outside the complaint, that its "attestation servers are exclusively located outside the United States" (Doc No. 22 at 7), and ignores the complaint's allegations that the claimed method is performed in the United States by Guardsquare's customers, under Guardsquare's direction and control, and by Guardsquare itself. (Doc No. 1 ¶¶ 31, 43.) Apart from its entity-specific arguments about Guardsquare GmbH and Guardsquare NV (Doc No. 22 at 1–2, 8–11), Guardsquare does not challenge the system claims (Counts III and IV) on territorial grounds, and the authority it cites forecloses any such challenge. Finally, Guardsquare's challenge to the accusation of DexGuard and iXGuard is a merits dispute, and its motion shows that it understands the allegations against those products. In sum, Guardsquare's motion should be denied in all respects.

## II. BACKGROUND

### A. The '858 Patent and the Complaint

Approov owns U.S. Patent No. 11,163,858 (the "'858 Patent"), which claims methods and systems for enabling a backend server to determine whether a client software application (particularly a mobile app) has been tampered with. (Doc No. 1 ¶¶ 30, 40; Doc No. 1-1.) In the claimed arrangement the client application calculates a cryptographic hash fingerprint of its executing code image and communicates it to an attestation server; the attestation server generates a pass or fail result; that result reaches the backend server through a signed token carried by the client; and the backend server controls its behavior conditionally on the result. (Doc No. 1 ¶ 30.) By its complaint, Approov asserts Defendants infringe method claims 1, 5, 6 and 10 and system claims 18, 19 and 20. (*Id.* ¶ 36.)

The complaint accuses Defendants of infringing the asserted claims of the '858 Patent with Guardsquare's App Attestation service, operated together with its client-side products DexGuard

(for Android) and iXGuard (for iOS), which together are defined as the "Accused Products." (*Id.* ¶ 24.) The complaint alleges that when those products are used together, "the customer has the option to hash and verify the application's executing code for attestation," that, on information and belief, U.S. customers enable that feature, and that Guardsquare itself publishes an account of such a deployment by a North American customer. (*Id.*)

Approov's complaint alleges that the claimed method is performed, and the claimed system made and used, in the United States by customers, by those customers under Guardsquare's direction and control, and by Guardsquare itself. (Doc No. 1 ¶¶ 31, 43, 59.) Paragraphs 43 and 59, and the allegation that Guardsquare itself performs the method, are made on information and belief. Finally, the complaint alleges that Guardsquare has known of the '858 Patent since at least Approov's September 30, 2025 cease-and-desist demand. (*Id.* ¶¶ 46, 62.)

### B. The Motion and the Armon Declaration

Guardsquare moved to dismiss Approov's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on October 22, 2026, filing with the motion a declaration of its counsel, Orion Armon, that attaches as Exhibit 1 a letter Mr. Armon wrote to Approov's counsel on October 17, 2025. (Doc Nos. 20–23.) The complaint does not mention that letter or its contents. Defendants' memorandum invokes the letter to report what Guardsquare told Approov in October 2025: that Guardsquare's software does not calculate a cryptographic hash fingerprint or control the backend conditionally, and that Guardsquare's "attestation servers are exclusively located outside the United States." (Doc No. 22 at 5 n.1, 6 n.2, 7.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7, 12 (1st Cir. 2011). The First Circuit has recognized that "some latitude may be appropriate" in applying the plausibility standard in certain types of cases. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013) (internal quotation marks

omitted) (quoting *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012)). Those are cases "in which a material part of the information needed is likely to be within the defendant's control." *Id.*

On a Rule 12(b)(6) motion the Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). Consideration of other documents "is forbidden, unless the proceeding is properly converted into one for summary judgment," subject to "narrow exceptions." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Guardsquare did not argue its motion should be converted into one for summary judgment. The Federal Circuit reviews Rule 12(b)(6) dismissals under regional circuit law while applying its own precedent to what a patent-infringement complaint must allege. *See Bot M8*, 4 F.4th at 1353; *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012); *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 34 (Fed. Cir. 2024).

## IV. PLAINTIFF OBJECTS TO THE ARMON DECLARATION AND ITS EXHIBIT 1.

### A. The Armon Declaration and Exhibit 1 Are Outside the Pleadings and Should Be Excluded

Several of Guardsquare's arguments invoke as supporting evidence Exhibit 1 to the Armon Declaration (a letter written by Guardsquare's outside litigation counsel): the asserted "materiality" of the hash and conditional-control limitations (Doc No. 22 at 5 n.1, 6 n.2), the method-claim argument (*id.* at 7), and the charge that Approov lacks "a good-faith factual basis" (*id.*). The Approov complaint does not reference, quote, attach, or rely on the Guardsquare letter of counsel, and Guardsquare's memorandum does not identify any exception under which the Court could consider it. Apart from Approov's 2019 disclosure of its technology under a nondisclosure agreement, the only pre-suit communication the complaint mentions is Approov's September 30, 2025, cease-and-desist demand, cited for Guardsquare's knowledge of the patent. (Doc No. 1 ¶¶ 46, 62.)

The exceptions for a court to consider materials outside the complaint such as the Armon Declaration are "narrow," and this Court has described them as "including when the complaint relies upon a document, the document's authenticity is not challenged, and it is integral to the plaintiff's claims." *Smith v. Bentley Univ.*, No. 1:25-cv-12317-AK, slip op. at 4–5 (D. Mass. July 6, 2026) (Kelley, J.). That exception does not apply to the Armon Declaration or the attached Armon letter. The complaint does not rely on the letter, and the letter is not integral to claims that arise from Guardsquare's products, not from a letter Guardsquare's counsel sent after Approov's demand. A defendant's pre-suit letter disputing infringement is not incorporated by the plaintiff's reference to its own demand. In *Smith*, this Court struck a report the complaint did "not cite, reference, nor rely on," and struck even emails that the complaint "references and relies on . . . to some extent," because "they are not integral to Plaintiff's claims." *Id.* at 5. The Court also credited the concern that the emails "omit related email exchanges, risking creating a misleading impression of events." *Id.* Even an officer's declaration is extrinsic; this Court has struck a declaration of a corporate officer, a vice president of National Medical Care, Inc., that the defendant attached to its motion to dismiss. *Mooney v. Fresenius Med. Care Holdings, Inc.*, No. 1:22-cv-12037-AK, slip op. at 2 n.1 (D. Mass. Aug. 22, 2024) (Kelley, J.) (describing earlier order, Dkt. 74 at 10–11). And it has sustained in part an objection to a defendant's declaration exhibits raised in the opposition itself. *Olsen v. Agenus Inc.*, No. 1:24-cv-12299-AK, slip op. at 8–11 (D. Mass. Mar. 24, 2026) (Kelley, J.).

The First Circuit has vacated, in part, a dismissal entered in reliance on a defendant's own letter. In *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63 (1st Cir. 2014), the defendant placed its letter before the court through an employee's affidavit in the preliminary-injunction proceedings, and the district court dismissed the complaint in reliance on it. The First Circuit held that the district court "relied on a document extraneous to the pleadings, and decided Foley's claims on the merits," which "equates to converting a motion to dismiss into a motion for summary judgment," improper where no discovery had occurred. *Id.* at 73–74. The court did "not see how the letter is integral" to the claims. *Id.* at 75. The same is true here. Nor does Guardsquare's framing of the letter as "notice"

(Doc No. 22 at 1, 7; *see id.* at 5 n.1, 6 n.2) change the analysis. *Bot M8*'s materiality factor concerns "the materiality of any given element to practicing the asserted claim(s)," 4 F.4th at 1353, not whether the defendant disputes that its product practices it, and a pre-suit denial is not a fact the Complaint pleads.

The proper course for this motion is to disregard the Armon Declaration and exhibit, in which event "no conversion occurs and the supplementary materials do not become part of the record." *Trans-Spec*, 524 F.3d at 321. Approov therefore objects to the Armon Declaration and its exhibit, and requests that the Court exclude them.

**B. Even If Considered, Counsel's Assertions Cannot Be Credited Against the Complaint's Allegations.**

Even a document properly before the Court on a Rule 12(b)(6) motion cannot be accepted for the truth of a defendant's contrary factual assertions. *Smith*, slip op. at 5 n.2 (documents considered "only for the fact that they contain certain information, not for the truth of their contents"). The Federal Circuit reversed a dismissal in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), where the defendants' argument "relie[d] on a factual finding" about how their process worked, because the defendants had not explained why the court could "make such a finding at this stage in light of Nalco's explicit pleadings to the contrary." *Id.* at 1350. The district court's "failure to credit these allegations as true is reversible error." *Id.* "Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the nonmovant's asserted inferences plausible." *Bill of Lading*, 681 F.3d at 1340. The Armon letter, attached to the Armon Declaration, is an unsworn, one-sided account by Guardsquare's counsel; it establishes only that Guardsquare disputes the allegations, which is what an answer is for. Every accused infringer disputes infringement; if a defendant could defeat a complaint by filing its own one-sided account, no patent case would survive the pleadings. Guardsquare's related refrain that Approov "lacks a well-founded factual basis," "lacks any factual basis," and "needs to disclose those facts" (Doc No. 22 at 1–2, 8 n.3) is not a pleading argument

either. "Although discovery may reveal facts that belie the plaintiffs' claim, that possibility does not negate its plausibility." *Ocasio-Hernández*, 640 F.3d at 19.

## V. THE COMPLAINT PLAUSIBLY ALLEGES INFRINGEMENT OF EVERY ASSERTED CLAIM.

### A. The Standard Is Fair Notice and Plausibility, Not Element-by-element Proof.

"A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352. "To the extent this district court and others have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Id.* A complaint suffices when it identifies the patent and accused products and alleges facts that make infringement plausible, which "is not akin to a 'probability requirement.'" *Id.* at 1352–53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (allegations that named products met each element "either literally or equivalently" gave "fair notice of infringement"). The Federal Circuit reaffirmed these rules in 2024, observing that limitation-by-limitation mapping is "not required to . . . avoid dismissal under Rule 12(b)(6)," and holding that the plaintiff "was not required to identify a specific customer." *AlexSam*, 119 F.4th at 42, 46.

Courts in this district apply the same rule. "Precedent in the First and Federal Circuits does not require that a plaintiff plead infringement on an element-by-element basis," and "courts may not impose such a blanket requirement." *MSTM, LLC v. AB Sciex LLC*, No. 1:23-cv-11121-MRG, slip op. at 14 (D. Mass. Mar. 10, 2026) (Guzman, J.). Disputes over whether an accused product performs a claimed step "are questions for the claim construction hearing, technical experts, and the discovery process." *Id.* at 18.

The Local Rules reflect the same sequence. Infringement claim charts identifying, "with as much specificity as reasonably possible from publicly available information or other information then within the patentee's possession, custody, or control," an "element-by-element description of where and how each element of each asserted claim is found in each accused product or method,"

are due 21 days after the initial scheduling conference. L.R. 16.6(d)(1)(A), (A)(iii). The accused infringer's technical documents, source code, samples and noninfringement charts follow no later than 42 days after the patentee's charts. L.R. 16.6(d)(4).

**B. The Complaint and Exhibit B Exceed the Required Standard.**

Approov's complaint does what the Federal Circuit and First Circuit require and more. Approov identifies the asserted claims (Doc No. 1 ¶ 36), names the Accused Products and explains how they fit together (*id.* ¶ 24), and describes in narrative form how the accused system operates at each stage: client-side evidence collection, hashing of the executing code, communication to the attestation server, generation of a pass or fail verdict, issuance of a signed token, and conditional backend access. (*Id.* ¶¶ 31–33.) It then attaches a chart that, for each of the twenty-five elements charted across the seven asserted claims, quotes Guardsquare's own description of the corresponding function. (Doc No. 1-2.) Guardsquare's characterization of the chart as "merely pair[ing] a claim limitation with one or more quotations" (Doc No. 22 at 3; *see id.* at 5) dismisses the narrative paragraphs the chart accompanies (*id.* at 3), which explain how the accused system operates, and ignores that the quotations are Guardsquare's own technical statements about the product at issue, each identified by source (Doc No. 1-2).

Courts in this district have sustained complaints of this kind. In *Ohio State Innovation Foundation v. Akamai Technologies, Inc.*, the plaintiff charted a mobile software product against the claims using the defendant's own publications and patent application. Judge Burroughs denied the motion, holding that the defendant's account of how its product actually operated was "inadequate to rebut its own statements." No. 1:19-cv-11528-ADB, slip op. at 5 (D. Mass. Sept. 20, 2019) (Burroughs, J.). In *Echosens, S.A. v. E-Scopics S.A.S.*, the court held that allegations that the elements in a claim chart "correspond to the Accused Product" were "sufficient to give Defendant 'fair notice,'" and that inducement allegations drawn from the defendant's website, videos and user manual were "not conclusory." No. 1:24-cv-11373-ADB, slip op. at 6 n.4, 21 (D. Mass. Mar. 20, 2025) (Burroughs, J.).

### C. The Two Limitations Guardsquare Singles Out Are Plausibly Pleaded.

Guardsquare contends that the quotations for the "cryptographic hash fingerprint" limitations (1[c] and 18[c]) have "no apparent relationship" to the claim language, and that Approov did not explain how the "controlling the behaviour" limitations (1[f] and 18[f]) relate to the quotations. (Doc No. 22 at 5–6.) They do.

The complaint alleges that the Accused Products "calculate a real-time hash value of the application's executing code image and compare[] the calculated real-time hash value to a known-good hash value," and "communicate the resulting code-integrity evidence, including the result of the hash-based integrity check, to an attestation server as part of the attestation process." (Doc No. 1 ¶ 33.) The chart quotes Guardsquare's own instruction to "[c]alculate the checksum, or hash, of the compiled piece of code whose integrity you want to verify," store it, and at runtime recalculate and compare it "with the expected value," together with Guardsquare's statements that evidence collected on the device is sent to the attestation service and that its attestation policies "may include . . . app and code integrity." (Doc No. 1-2 at 1[b], 1[c], 1[d].) Guardsquare calls the checksumming passage "untethered to the Accused Products" (Doc No. 22 at 6), but the Approov complaint tethers it: it alleges that the Accused Products perform this hash check (Doc No. 1 ¶ 33) and that DexGuard and iXGuard are their device-side components (*id.* ¶ 24). A hash of the application's code, recalculated on the device at runtime and used as code-integrity evidence for attestation, plausibly meets the claim language. Whether a checksum of compiled code is a "cryptographic hash fingerprint" of the "executing code image" is a question of claim construction, and whether the attestation service receives the hash itself or only the result of the device's comparison is a question of fact. These factual questions cannot be resolved on this motion. *See Nalco*, 883 F.3d at 1349 (defendant's noninfringement theory presented "classic Markman arguments" and "a dispute not suitable for resolution on a motion to dismiss"). The complaint also pleads the second possibility expressly, for this limitation: if only the result of the comparison is communicated, "that difference is insubstantial and the limitation is met under the doctrine of equivalents." (Doc No. 1 ¶ 33.) The Approov complaint also pleads, for the claimed invention as a whole, the function (verifying client

app integrity and enforcing backend access control), the way (client-side integrity measurements, pass or fail results, and signed tokens) and the result (keeping tampered or non-genuine apps from protected backend services). (*Id.* ¶ 34.) The Federal Circuit has held equivalents sufficiently pleaded where the complaint incorporated contentions explaining function, way and result for a disputed claim element, *Nalco*, 883 F.3d at 1354, and, in affirming the dismissal of allegations that contradicted infringement, noted that those allegations "were not pled in the alternative," *Bot M8*, 4 F.4th at 1354 n.3. Any argument that the alternative would vitiate the limitation would raise the kind of claim-scope dispute that is "not suitable for resolution on a motion to dismiss." *Nalco*, 883 F.3d at 1349.

The asserted claims require controlling the backend server's behavior conditionally on a prior pass or fail result. The chart quotes Guardsquare: "your APIs will receive incoming requests from your application with attestation tokens," the tokens "enable your service to either grant access to your APIs or reject the application," and "[i]f any of these policies are violated, the server will issue an invalid token to prevent unauthorized app access." (Doc No. 1-2 at 1[f].) The complaint alleges the same. (Doc No. 1 ¶ 33.) Beyond its general objections to the chart's format and the technology's complexity, Guardsquare's only responses are its statement that it informed Approov that the limitation "was not used by Guardsquare's software" (Doc No. 22 at 6 n.2), which is a denial, not a pleading deficiency, and its assertion that the limitation's "materiality" demands more detail (*id.*).

### D. Guardsquare's Authorities Do Not Establish A Heightened Standard for Software Cases.

Guardsquare asserts that "[s]oftware cases, such as this one, are recognized as involving more complex technology where more is required." (Doc No. 22 at 4.) *Bot M8* lists the complexity of the technology and the materiality of an element among the factors that bear on the level of detail required, 4 F.4th at 1353, but it affirmed dismissal only where the allegations "merely track the claim language" or contradicted infringement, *id.* at 1354–55, and reversed where the complaint explained how the accused product operates. Guardsquare cites no First Circuit, Federal

Circuit or District of Massachusetts decision adopting a heightened standard for software, and the out-of-circuit cases it cites apply *Bot M8*-style case-specific factors rather than a categorical rule.

*Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *2–3 (E.D. Tex. Dec. 11, 2018), involved unexplained screenshots. The court that decided it has since "more than once, cautioned litigants on their over-reliance on the *Chapterhouse* case," explaining that its "fatal flaw" was "the failure to include descriptive explanations of the screenshots," and that "a complaint should not demand the same level of specificity as infringement contentions." *Liberty Peak Ventures, LLC v. Regions Fin. Corp.*, No. 2:21-cv-00417-JRG, slip op. at 4 (E.D. Tex. Mar. 15, 2022) (quoting *Fractus, S.A. v. TCL Corp.*, No. 2:20-cv-00097-JRG, 2021 WL 2483155, at *3 (E.D. Tex. June 2, 2021)). Here, the complaint's narrative paragraphs describe the operation of the system the quoted passages document, from client-side hashing to the conditional grant or denial of access. (Doc No. 1 ¶¶ 31–34.)

Guardsquare quotes *Lexington Luminance LLC v. Technical Consumer Products, Inc.*, as holding that "[t]here are no facts or evidence provided to show the Court that this [quotation] is indeed representative of Defendant's product." (Doc No. 22 at 6.) The bracketed word replaces the court's own. The opinion addresses unsourced images of an LED structure: "There are no facts or evidence provided to show the Court that this image is indeed representative of Defendant's product." No. 5:22-cv-02235-DAR, slip op. at 6 (N.D. Ohio May 9, 2025). Exhibit B quotes Guardsquare's own publications and identifies each source. (Doc No. 1-2; *see* Doc No. 1 ¶ 54.)

## VI. COUNTS I AND II STATE CLAIMS FOR INFRINGEMENT OF THE METHOD CLAIMS.

### A. The Location of Guardsquare's Servers Is Not Alleged in the Complaint and Cannot Be Resolved By This Motion.

Guardsquare's only argument directed specifically to Counts I and II is that Approov pleads no factual basis for performance of every step in the United States, because it "never alleges (much less provides any factual basis to support an allegation)" that Defendants or their customers operate attestation servers here, and that Guardsquare's counsel told Approov before suit that they are not. (Doc No. 22 at 7.) The second proposition comes only from the improper Armon Declaration and

the attached letter of Guardsquare's outside litigation counsel, which the Court should not consider and in any event cannot credit. *See supra* Part IV. The first proposition does not help Guardsquare. The complaint alleges that each step of the claimed method is performed within the United States (Doc No. 1 ¶¶ 31, 43), including in Guardsquare's own U.S. deployments, "in which it operates or controls each claimed component" (*id.* ¶ 31). Approov need not also plead the location of non-public server infrastructure, including that of the servers Guardsquare uses in its own U.S. deployments, which is information in the defendant's control, for which "some latitude may be appropriate." *García-Catalán*, 734 F.3d at 104. On each of the complaint's theories the attestation step is performed by Guardsquare, attributed to it, or performed by customers using Guardsquare's attestation service (Doc No. 1 ¶¶ 24, 31), so where that step occurs is a question about Guardsquare's own operations. Guardsquare must produce documents "sufficient to show the composition, operation, construction, and performance" of the accused functionality within about nine weeks after the initial scheduling conference. L.R. 16.6(d)(4)(A). *NTP, Inc. v. Research in Motion, Ltd.* holds that a method is used within the United States only if each step is performed here, 418 F.3d 1282, 1318 (Fed. Cir. 2005); it was decided on appeal after trial and does not permit a court to decide on a motion to dismiss, on the strength of a defendant's letter, where the steps are performed.

Judge Bryson recently declined to decide the same question at the pleading stage: "The ultimate question whether the steps of the claimed method were all actually performed within the United States raises a factual dispute that cannot be resolved at this early stage of the case on a Rule 12(b)(6) motion." *Bayer CropScience LLC v. Pfizer, Inc.*, No. 26-13, slip op. at 20 (D. Del. Sept. 28, 2026) (Bryson, J., sitting by designation). Judge Burroughs, in the case Guardsquare cites, similarly declined to resolve a factual noninfringement dispute on the pleadings: "Global Graphics' arguments to the contrary speak to a factual dispute that cannot be resolved at this stage." *Rampage LLC v. Global Graphics SE*, No. 1:16-cv-10691-ADB, slip op. at 15 (D. Mass. Jan. 19, 2017) (Burroughs, J.).

### B. The Complaint Pleads Performance of Each Step in the United States by Guardsquare Or Attributable To It.

First, Approov's complaint alleges, on information and belief, that Guardsquare itself performs every step "in its own development, testing, demonstration, and technical-support deployments within the United States, in which it operates or controls each claimed component." (Doc No. 1 ¶ 31.) That allegation rests on pleaded facts: Guardsquare Inc. maintains its U.S. operating presence in Boston (*id.* ¶ 6), "deploys Guardsquare's products in production environments," and has U.S. "customer success, professional services, marketing, and select engineering and product functions" (*id.* ¶ 29). On this theory alone, Count I states a claim. A defendant's own in-house use of a claimed method is direct infringement, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1296–97 (Fed. Cir. 2015), and a court addressing the same allegation found "it plausible that Apple may have tested its products or otherwise executed the relevant methods in the course of product development and support." *Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-cv-00477-YGR, slip op. at 4 (N.D. Cal. Oct. 15, 2020). Unlike the John Doe count in *Rampage*, which rested on publications that "do not mention testing at all," *Rampage*, slip op. at 8, the allegation here concerns a named defendant alleged to deploy the products from its U.S. operation and to maintain U.S. engineering and support functions.

Second, the complaint alleges that Guardsquare is responsible for the steps its customers perform in the United States. Under *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc), an actor is liable for steps performed by others "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023. The complaint alleges that Guardsquare conditions "receipt of a valid attestation token on the customer performing those steps" and establishes "the manner and timing of that performance through its software, its integration requirements, and its technical documentation" (Doc No. 1 ¶ 31), and it pleads the facts behind that allegation: customers integrate Guardsquare's client components and enable the code-integrity feature (*id.* ¶¶ 24, 31); on information and belief,

Guardsquare Inc. licenses and supports the platform under customer agreements (*id.* ¶ 29); the attestation step is performed on "Guardsquare's attestation server" (*id.* ¶ 59; *see id.* ¶¶ 31–33); and "[i]f any of these policies are violated, the server will issue an invalid token to prevent unauthorized app access" (Doc No. 1-2 at 1[f]). Once a customer enables the feature, the token on which its backend grants access issues only if the customer's application performs the steps Guardsquare prescribes. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017) (benefit available "only" if third party "performs certain steps identified by the defendant"). "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact . . . ." *Akamai*, 797 F.3d at 1023. The Federal Circuit reversed a Rule 12(b)(6) dismissal of a divided-infringement claim pleaded on a conditioned-benefit theory, holding that "[o]ur case law does not require more at the pleading stage." *Nalco*, 883 F.3d at 1353. That is more than the bare software functionality one court found insufficient, *Sentius*, slip op. at 6: the Complaint pleads a benefit, a valid token, that issues only if the customer's application performs the prescribed steps, and the software, integration requirements and documentation that fix manner and timing.

Third, the complaint alleges that U.S. customers integrate Guardsquare's client-side components, enable the code-integrity attestation feature, and operate backend servers that validate Guardsquare's tokens (Doc No. 1 ¶¶ 24, 31), and that Guardsquare NV "has induced and, directly or indirectly, caused Guardsquare Inc. to commit acts of infringement on its behalf" (*id.* ¶ 9). Count II rests on the direct infringement of Guardsquare's customers and users (Doc No. 1 ¶¶ 31, 53), and the Complaint also alleges that NV induced Guardsquare Inc.'s own infringement (*id.* ¶ 9). Count II does not depend on identifying customers by name: a patentee pleading inducement need only plead "facts sufficient to allow an inference that at least one direct infringer exists." *Bill of Lading*, 681 F.3d at 1336; *see also AlexSam*, 119 F.4th at 46; *Echosens*, slip op. at 21–22 n.13 ("At this preliminary stage, Plaintiff need not identify the alleged third-party direct infringers with specificity").

## VII. COUNTS III AND IV STATE CLAIMS FOR INFRINGEMENT OF THE SYSTEM CLAIMS.

Guardsquare's territorial argument is expressly confined to "the method claims in Count I and II." (Doc No. 22 at 1; *see id.* at 7.) Apart from its entity-specific arguments about Guardsquare GmbH and Guardsquare NV (Doc No. 22 at 1–2, 8–11), Defendants make no such argument against the system claims, and Defendants could not do so. The authority Guardsquare cites holds that "[t]he use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained," and that the location of a component in Canada "did not, as a matter of law, preclude infringement of the asserted system claims." *NTP*, 418 F.3d at 1317. A customer that "put[s] the invention into service" by controlling the system as a whole and obtaining its benefit uses the system, and "[i]t makes no difference that the back-end processing is physically possessed by" the vendor. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284–85 (Fed. Cir. 2011); *see Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (user must control and benefit from each claimed component). Approov's complaint alleges that Guardsquare's customers "make and use the claimed system by combining the client computing devices, Guardsquare's attestation server, and their own backend server computing devices into the claimed configuration and putting that system as a whole into service in the United States" (Doc No. 1 ¶ 59), and facts showing that they obtain the benefit of each component, because their backends grant or deny access based on the attestation server's verdict on the client-side integrity evidence, carried in the signed token (*id.* ¶¶ 32–33); and it alleges that Guardsquare itself makes and uses the system in its own U.S. deployments, in which "it operates or controls each claimed component." (*Id.* ¶ 31; *see id.* ¶ 59.) This is all the law requires.

## VIII. THE COMPLAINT STATES CLAIMS AGAINST EACH DEFENDANT.

### A. Guardsquare NV

Guardsquare NV argues that Approov must "pierce the corporate veil" to hold it liable for Guardsquare Inc.'s acts. (Doc No. 22 at 10–11.) The Complaint does not proceed on a veil-piercing theory, and its allegations against NV, though largely made on information and belief, are not

conclusory. It alleges NV's own conduct: NV "provides mobile application security solutions, including its mobile app attestation service, to its clients in the United States and abroad," clients to whom Guardsquare Inc. provides "marketing, sales, and support"; NV "has committed acts of infringement within this District"; and NV "has induced and, directly or indirectly, caused Guardsquare Inc. to commit acts of infringement on its behalf." (Doc No. 1 ¶¶ 5, 6, 9.) A parent is liable for its own infringing acts, 35 U.S.C. § 271(a), and for its subsidiary's infringement under § 271(b) if it "actively induced that infringement." *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 597 (Fed. Cir. 1988). Veil piercing is required only to hold a parent liable under § 271(a) for a subsidiary's acts, *id.* at 596, which the Complaint does not attempt. The Federal Circuit vacated a dismissal in *AlexSam*, holding that whether the parent itself engaged in the accused conduct "is a contested issue of fact" that the district court "was not free to decide on a motion to dismiss." *AlexSam*, 119 F.4th at 44 (internal quotation marks omitted). *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353 (D. Mass. 2010) (Young, J.), on which Guardsquare relies, is a contract case asking whether a parent was liable on its subsidiary's debts under alter-ego principles, and *PXP Producing Co. v. MitEnergy Upstream LLC*, 342 A.3d 402 (Del. Ch. 2025), is a Chancery letter opinion denying a motion to appoint a receiver, in which the petitioner conceded it "has not brought veil-piercing claims in this action." *PXP*, 342 A.3d at 419. Neither addresses a parent's liability for its own infringing acts or for inducement.

Nor is the complaint's use of the defined collective term "Guardsquare" a defect. "[G]roup pleadings are not, prima facie, excluded by Rule 8(a)." *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (Young, J.). The Complaint defines the term and identifies each entity's role. (Doc No. 1 ¶¶ 1, 5–7, 9–11, 29.)

**B. Guardsquare GmbH**

Approov's complaint alleges that Guardsquare GmbH provides "significant research, development, and engineering support to Guardsquare NV and Guardsquare Inc.," that it "has provided research, development, and engineering support to Guardsquare's customers in this District," and that it has committed acts of infringement in this District. (Doc No. 1 ¶¶ 7, 11.)

Guardsquare responds that these information-and-belief allegations are conclusory, that "research, development, and engineering support" are not acts of infringement under § 271, and that GmbH's alleged acts occurred in Germany. (Doc No. 22 at 2, 8–9 & n.3.) The complaint does not allege that engineering support is itself infringement, and it does not allege acts confined to Germany. It alleges that GmbH supports customers "in this District" (Doc No. 1 ¶ 11), that Guardsquare's U.S. customers deploy the Accused Products and perform the claimed method (*id.* ¶¶ 24, 31), and that Defendants induce that infringement with knowledge of the patent since at least September 30, 2025 (*id.* ¶¶ 46, 53–54, 62, 69–70). GmbH's own alleged conduct, engineering support to Guardsquare's customers in this District (Doc No. 1 ¶ 11), undertaken with knowledge of the patent, is conduct that can "actively induce[] infringement." 35 U.S.C. § 271(b). How that support was divided among Guardsquare's affiliates is a matter for discovery, not a ground for dismissal.

The First Circuit case Guardsquare cites for its information-and-belief argument vacated the dismissal before it and remanded, holding that "some latitude" may be appropriate where a plausible claim is indicated "based on what is known" and "some of the information needed may be in the control of [the] defendants," *Menard*, 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)), and that "[w]here modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint," *id.* The allegations here are not "pure speculation," *id.* at 44; they rest on pleaded facts about GmbH's engineering role, Guardsquare's U.S. deployments and its U.S. customer base. (Doc No. 1 ¶¶ 7, 11, 24, 29.)

## IX. DEXGUARD AND IXGUARD ARE PROPERLY ACCUSED.

Guardsquare contends that Approov relies on App Attestation as representative of DexGuard and iXGuard without alleging that DexGuard and iXGuard are materially similar to it. (Doc No. 22 at 11–12.) The complaint alleges something different. Approov does not accuse DexGuard and iXGuard as stand-ins for App Attestation; the complaint accuses them as components of the combination through which the infringement occurs (Doc No. 1 ¶¶ 24, 31). Guardsquare's point that "the fact that two products might be used together does not provide a legal

basis for accusing an otherwise non-infringing product" (Doc No. 22 at 12) does not address what the complaint alleges. The complaint accuses a single system of which DexGuard and iXGuard are components: DexGuard and iXGuard are the "device-side products" that, "when offered along with Guardsquare's Mobile App Attestation product and service," make up the Accused Products, and when those products are "used together, the customer has the option to hash and verify the application's executing code for attestation." (Doc No. 1 ¶ 24.) The complaint alleges that the Accused Products, of which DexGuard and iXGuard are the device-side components, calculate the hash on the client, while the attestation service performs the server-side steps. (*Id.* ¶¶ 24, 31–33; Doc No. 1-2 at 1[c], 18[c].) The complaint thus identifies each accused product and pleads its role in the infringement, which is what Local Rule 16.6(d)(1)(A)(i) and (iii) will later require in contentions and more than Rule 8 requires now.

*Progenics Pharmaceuticals, Inc. v. MIM Software Inc.*, 762 F. Supp. 3d 100 (D. Mass. 2025) (Saris, J.), Guardsquare's only authority, confirms the point. Judge Saris dismissed the '486-patent claim there, without prejudice, only as to LesionID, which the complaint neither alleged used the product whose operation the complaint described nor alleged was represented by it. Although the complaint set out "no facts" about LesionID Pro either, it alleged that LesionID Pro "uses" the product whose operation the complaint described, and as to that product she held that "because the Court declines to dismiss this claim of infringement with regard to Contour ProtégéAI, the claim survives with regard to LesionID Pro too." *Id.* at 117. The same reasoning applies here, where Approov's complaint alleges that DexGuard and iXGuard are the device-side components of the accused combination.

## X. IN THE ALTERNATIVE, APPROOV SHOULD BE GRANTED LEAVE TO AMEND.

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("this mandate is to be heeded"). This is Approov's original complaint, no scheduling order has issued, and no discovery has occurred. This Court denied leave in *Olsen*, a securities case decided after extensive briefing and argument, where the

request "lacked any further explanation of the specific factual deficiencies he would amend or why such an amendment would not be futile." *Olsen*, slip op. at 31. Approov's request is specific. Should the Court find any count or Defendant insufficiently pleaded, Approov would, within 21 days: (a) add to Exhibit B, for each limitation, an explanation of how the quoted passages meet it, including a limitation-specific function-way-result analysis for the hash-fingerprint limitations; (b) quote the published integration and token-validation guidance on which the direction-and-control theory rests; and (c) allege, entity by entity and to the extent public information permits, the conduct of Guardsquare NV, Guardsquare Inc. and Guardsquare GmbH now described under the collective term.

## XI. CONCLUSION

For the foregoing reasons, Approov's objection to the Armon Declaration and Exhibit 1 (Doc Nos. 23, 23-1) should be sustained, and Defendants' Motion to Dismiss (Doc No. 21) should be denied in its entirety. In the alternative, Approov should be granted leave to amend.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Approov believes that oral argument may assist the Court and respectfully requests to be heard.

Dated: November 25, 2026

Respectfully submitted,

APPROOV LTD.,
By its attorneys,

*/s/ Aaron S. Jacobs*
Robert R. Gilman (BBO No. 645224)
Aaron S. Jacobs (BBO No. 677545)
Adriana Farias (BBO No. 715130)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
rgilman@princelobel.com
ajacobs@princelobel.com
afarias@princelobel.com

*/s/ John D. van Loben Sels*
John D. van Loben Sels
(admitted pro hac vice)
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Tel: (415) 392-1960
jvanlobensels@sideman.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2026, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Aaron S. Jacobs*
Aaron S. Jacobs